# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DONNA KRAFT,**
   *on behalf of Kenneth W. Kraft,*

      Plaintiff,

     v.                                                                                                 Case No. 17-CV-802

**NANCY A. BERRYHILL,**
   *Deputy Commissioner of Operations,*
   *Social Security Administration,*

      Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Donna Kraft alleges that she is unable to work due to fibromyalgia, a degenerative back and neck condition, and mental-health impairments. After the Social Security Administration denied her applications for disability benefits, Ms. Kraft requested and received a hearing before an administrative law judge. The ALJ determined that Ms. Kraft remained capable of working notwithstanding her impairments. Ms. Kraft now seeks judicial review of that decision.

Ms. Kraft argues that the ALJ erred in determining that she had the residual functional capacity to perform a restricted range of light work. The Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence. The Court agrees with Ms. Kraft. Because the ALJ's RFC assessment is not supported by substantial evidence, her decision denying Social Security benefits to Ms. Kraft will be reversed and this matter will be remanded for further proceedings.

## I. Background

Ms. Kraft was born in Wausau, Wisconsin, on October 27, 1965. Transcript 38, 717, ECF Nos. 10-2–10-8. At a young age, she moved to Milwaukee with her family. Tr. 717. Ms. Kraft attended high school in the city; however, she dropped out several months before graduating. Ms. Kraft moved to California for a short time before returning to Milwaukee and securing a job in the restaurant industry. She was married at age twenty-one but got divorced four years later. In 1996, Ms. Kraft began working in a factory; she maintained this type of employment for about ten years. Ms. Kraft remarried in 1999. Her second husband passed away in 2013. Ms. Kraft has six adult-aged children.

In June 2014, Ms. Kraft applied for disability insurance benefits and supplemental security income, alleging that she became disabled on January 31, 2006. Tr. 227, 234. She subsequently added a claim for disabled widow's benefits. *See* Tr. 15. Ms. Kraft asserted that she was unable to work due to fibromyalgia, depression, back and neck problems, a fracture in her mid-back, bone spurs along her spine, and arthritis in her back. *See* Tr. 63, 73. After the SSA denied her applications initially, Tr. 62–82, and upon reconsideration, Tr. 83–135, Ms. Kraft requested a hearing before an ALJ, *see* Tr. 172–73.

The SSA granted Ms. Kraft's request, *see* Tr. 174–88, 192–224, and held an administrative hearing on December 5, 2016, before ALJ Margaret J. O'Grady, *see* Tr. 36–60. Ms. Kraft was represented by an attorney at the hearing. *See* Tr. 35. The

attorney amended Ms. Kraft's alleged onset date to her fiftieth birthday—October 27, 2015—to be consistent with her request for widow's benefits. Tr. 39–40.

Ms. Kraft testified at the hearing. She indicated that her back and neck pain was constant and that her medications (e.g., Percocet) provided some relief but did not entirely alleviate her pain. Tr. 41–44. Ms. Kraft further indicated that she had no permanent residence, Tr. 38–39, and that her typical day involved crocheting, reading books, watching TV, caring for her personal needs, cooking, washing dishes, vacuuming, shopping in stores, and using her phone, Tr. 44–46. Ms. Kraft testified that she had trouble climbing stairs and that she could walk only one-half block before needing to rest. Tr. 44–45. Ms. Kraft explained that, because of her back and neck pain, her doctors restricted her from lifting anything over two pounds and indicated that she could not sit or stand for more than two hours. Tr. 50–54.

The ALJ also heard testimony from Susan Entenberg, a vocational expert. Ms. Entenberg testified that a hypothetical individual with Ms. Kraft's age, education, work experience, and RFC could still perform her past relevant work as a laborer and could also work as a cashier, a housekeeper, or a small-parts assembler. Tr. 56–58. According to Ms. Entenberg, those jobs would allow an employee to be off task no more than ten percent of the workday, and employers at those jobs would tolerate, on average, less than one unexcused absence each month. Tr. 58.

On February 13, 2017, the ALJ issued a decision unfavorable to Ms. Kraft. Tr. 12–34. The ALJ determined that Ms. Kraft met the prerequisites for disabled widow's benefits; (1) Ms. Kraft had not engaged in substantial gainful activity since

her amended alleged onset date; (2) Ms. Kraft suffered from ten "severe" impairments: asthma, degenerative disc disease/spondylosis, fibromyalgia, hernia, mood disorder, anxiety disorder, attention-deficit disorder, post-traumatic stress disorder, bipolar disorder, and depression; (3) Ms. Kraft did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Ms. Kraft had the RFC to perform a restricted range of light work; (4) Ms. Kraft was capable of performing her past job as a laborer; and (5) other jobs existed in significant numbers in the national economy that Ms. Kraft could perform. *See* Tr. 18–29. Based on those findings, the ALJ concluded that Ms. Kraft was not disabled.

Thereafter, Ms. Kraft requested review of the ALJ's decision by the SSA's Appeals Council. Tr. 10–11. On April 10, 2017, the Appeals Council denied Ms. Kraft's request for review, Tr. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Ms. Kraft filed this action on June 7, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Order Reassigning Case on Consent, ECF No. 7; *see also* Consent to Proceed Before a U.S. Magistrate Judge, ECF Nos. 4, 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social

Security, ECF No. 16; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 20; Plaintiff's Reply to Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 21.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.

5

2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

### III. Discussion

Ms. Kraft maintains that the ALJ's decision denying her Social Security benefits "is not supported by substantial evidence and is contrary to law." Compl.

6

¶ 8. She asks the Court to set aside the ALJ's decision or, alternatively, to reverse and remand the matter for further proceedings. Compl. p. 2.

## A. Legal framework

Under the Social Security Act, a person is "disabled" only if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to her prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since her alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves her unable to perform the requirements of her past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Between steps three and four of the sequential evaluation process, the ALJ must determine the claimant's RFC—that is, the most she can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* Social Security Ruling No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). ALJs must assess a claimant's RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" SSR No. 96-8p, 1996 SSR LEXIS 5, at *5–6; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR No. 96-8p, 1996 SSR LEXIS 5, at *19. "The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

The ALJ here determined that Ms. Kraft had the RFC to perform light work, except that she was limited to no concentrated exposure to fumes, dust, or

environmental irritants; no more than occasional climbing, stooping, crouching, crawling, kneeling, or balancing; and simple, routine, repetitive, non-complex work. Tr. 20. That RFC, according to the ALJ, was supported by the objective medical evidence, the improvement and stability in Ms. Kraft's impairments with treatment, the clinical observations noted by Ms. Kraft's treatment providers, and Ms. Kraft's daily activities. *See* Tr. 20–27. Ms. Kraft argues that the ALJ erred in evaluating her physical RFC, her treating physicians' opinions, her mental RFC, and her subjective allegations.

### 1. Whether the ALJ erred in evaluating Ms. Kraft's physical RFC

Ms. Kraft first argues that the ALJ's light-work finding is not supported by substantial evidence. Ms. Kraft maintains that the ALJ created an evidentiary deficit when she rejected all medical opinions and crafted her own RFC with specific work-related limitations. According to Ms. Kraft, this error was material because the vocational expert was questioned only about a hypothetical individual who could perform the lifting requirements of light work. Ms. Kraft further claims that, if she had been limited to sedentary work, then the medical-vocational guidelines (i.e., the Grid) would direct a disabled finding. *See* Pl.'s Br. 4–8; Pl.'s Reply 1–3.

The record contains several assertions concerning Ms. Kraft's lifting-and-carrying capabilities. Ms. Kraft indicated that she had difficulty lifting anything and that her doctor had limited her to lifting only one or two pounds. *See* Tr. 55, 298, 303, 306, 320, 325, 328. Treating physician Arthur Mines, M.D., opined that Ms. Kraft could lift five pounds, Tr. 556; another treating physician, Jesse

9

VanBoomel, M.D., opined that Ms. Kraft could lift up to ten pounds, Tr. 593; state agency medical consultant Pat Chan, M.D., determined that Ms. Kraft could occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds, Tr. 70; and a different medical consultant, Mina Khorshidi, M.D., determined that Ms. Kraft could occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds, Tr. 99–100.

The ALJ rejected each of those five assertions and instead reached her own conclusion: Ms. Kraft could perform light work without any additional lifting restrictions, meaning she could lift no more than twenty pounds at a time and could frequently lift and carry objects weighing up to ten pounds. *See* Tr. 20 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). As discussed below, the record fails to support this very specific work-related limitation.

The Commissioner maintains that Dr. Khorshidi's opinion—that Ms. Kraft could perform medium work—constitutes substantial evidence in support of the ALJ's physical RFC assessment. *See* Def.'s Mem. 4–6. But the ALJ gave little weight to Dr. Khorshidi's opinion because, in her view, more recent evidence showed that Ms. Kraft was "even more limited than initially determined with regard to postural and environmental limitations." *See* Tr. 26–27. The Commissioner reads into this explanation that the ALJ accepted Dr. Khorshidi's opinion about Ms. Kraft's lifting capabilities. Even if true, that reading does not explain how the ALJ arrived at her figures, as the ALJ determined that Ms. Kraft was significantly more limited in her ability to lift and carry than opined by Dr. Khorshidi.

10

The Commissioner also seems to suggest that the ALJ's light-work finding is supported by substantial evidence because it falls between Dr. Chan's and Dr. Khorshidi's opinions. *See* Def.'s Mem. 6 (noting that "the opinions of the state agency doctors indicate that [Ms. Kraft] was capable of lifting between ten and fifty pounds"). The Commissioner, however, offers no support for this split-the-baby approach. Indeed, at least one district court within the Seventh Circuit has rejected it. *See Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838–39 (N.D. Ill. 2006) (finding error where the ALJ constructed a "middle ground" between two rejected medical opinions regarding the claimant's RFC).

The other evidence cited by the ALJ in support of her RFC assessment does not substantiate a specific light-work lifting finding. The ALJ did not connect Ms. Kraft's supposed "minimal" objective medical findings and improvement with treatment with an ability to lift a particular weight. The ALJ did not cite any clinical findings demonstrating that Ms. Kraft could lift up to twenty pounds at a time and frequently lift and carry ten pounds. And the daily activities cited by the ALJ—preparing and completing simple meals, washing dishes, doing laundry, driving, using public transportation, shopping in stores, handling personal finances, talking to family and friends, spending time with an adult-aged child, caring for personal needs, cleaning, reading books, playing games on a phone, crocheting, watching TV, and vacuuming, Tr. 24 (citing Tr. 320–28, 716–22, hearing testimony)—do not show that she had those capabilities.

In sum, the ALJ's light-work finding is not supported by substantial evidence. It's true that at the hearing level, the ALJ alone is responsible for assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(b), 416.946(b). But that regulation does not relieve the ALJ from her obligation to build an accurate and logical bridge from the evidence to her conclusions. The ALJ's light-work finding stands alone on an island with no such connecting bridge, leaving this Court with no path to follow. Moreover, this error could be material, as the ALJ never elicited testimony from the vocational expert on whether a hypothetical person with a more restricted ability to lift could still work. *See* Tr. 55–58. The appropriate remedy therefore is to remand this matter for another administrative hearing.

### 2. Whether the ALJ erred in evaluating the opinions of Ms. Kraft's treating physicians

Next, Ms. Kraft argues that the ALJ did not sufficiently explain the weight she assigned to the opinions of Dr. Mines and Dr. VanBommel. According to Ms. Kraft, the ALJ failed to analyze those opinions in accordance with the factors outlined in 20 C.F.R. §§ 404.1527, 416.927. *See* Pl.'s Br. 8–12; Pl.'s Reply 3–6.

An ALJ must give "controlling weight" to a treating source's opinion on the nature and severity of the claimant's impairment if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."

§§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR No. 96-2p, 1996 SSR LEXIS 9, at *1–4 (July 2, 1996); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).[1]

A treating source's opinion that is not entitled to controlling weight need not be rejected. Instead, the opinion is entitled to deference, and the ALJ must weigh it using several factors, including the length, nature, and extent of the claimant's relationship with the treating source; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the source is a specialist. *See* §§ 404.1527(c), 416.927(c); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1087 (E.D. Wis. 2009). Moreover, the ALJ must always give "good reasons" to support the weight ultimately assigned to the treating source's opinion. §§ 404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

The record contains opinions from two of Ms. Kraft's primary care physicians: Arthur Mines, M.D., and Jesse VanBommel, M.D. Both treating doctors opined—in March 2014 (Dr. Mines) and February 2015 (Dr. VanBommel)—that Ms. Kraft had significant exertional (sitting, standing, walking, and lifting) and non-exertional (twisting, stooping, crouching, squatting, climbing stairs, climbing ladders, looking down, turning her head, looking up, holding her head in place, and using her hands, fingers, and arms) limitations. *See* Tr. 555–59, 592–96. If either opinion had been

---

[1] In early 2017, the SSA eliminated the "treating source rule." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Those revisions, however, do not apply here because Ms. Kraft's claim was filed before March 27, 2017. *See id.*

afforded controlling weight, it is likely that Ms. Kraft would have been found disabled.

The ALJ gave both opinions "no significant weight" because each was dated prior to Ms. Kraft's amended alleged onset date (October 2015) and because, in the ALJ's view, both were not supported by the objective medical evidence. *See* Tr. 25–26. The ALJ also discounted Dr. VanBommel's opinion because he had just begun treating Ms. Kraft and had seen her on only five occasions at the time he completed his assessment. Tr. 26. Further, the ALJ concluded that Dr. VanBommel's opinion "appear[ed] to be based on [Ms. Kraft's] non-compliance with treatment and unauthorized drug use." Tr. 26.

The weight given to the opinions of Ms. Kraft's treating doctors should be reconsidered on remand. Strictly speaking, those opinions were rendered prior to Ms. Kraft's amended alleged onset date. But that fact would a good reason to discredit the doctors' opinions only if Ms. Kraft's impairments and limitations had improved since the doctors provided them. The ALJ, however, never made such a connection. Indeed, the ALJ discounted the state agency doctors' opinions—which were made in February 2015—because more recent evidence showed that Ms. Kraft was "even more limited than initially determined with regard to postural and environmental limitations." Tr. 26–27. The ALJ also failed to consider why Ms. Kraft amended her alleged onset date. Ms. Kraft initially alleged that she became disabled in January 2006. *See* Tr. 227. At the administrative hearing, her attorney

amended that date to October 2015 so that Ms. Kraft would be eligible for widow's benefits, not because that is when her disability started. *See* Tr. 39.

Moreover, the ALJ did not sufficiently explain her other reasons for discounting the treating doctors' opinions. The ALJ concluded that the objective medical evidence showed only "minimal" findings but never explained why those findings did not support the doctors' opinions. While SSA regulations require ALJs to consider the length of the treatment relationship, *see* §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), the ALJ never explained why five visits with Dr. VanBommel in three months was insufficient to establish a reliable picture of Ms. Kraft's impairments. And the ALJ never explained why she believed that Dr. VanBommel's opinion was based on Ms. Kraft's alleged unauthorized prescription drug use, what that means, or why that affected the disability determination.

In sum, on remand the ALJ should reevaluate the opinions of Dr. Mines and Dr. VanBommel and determine whether either (or both or neither) opinion is entitled to controlling weight. If not, the ALJ must provide better reasons for the weight she assigns to those opinions.

### 3. Whether the ALJ erred in evaluating Ms. Kraft's mental RFC

Ms. Kraft also argues that the ALJ's RFC assessment did not adequately capture her mental limitations. According to Ms. Kraft, the record demonstrated moderate difficulties with concentration, persistence, or pace and a limited ability to focus. The ALJ's limitation to simple, routine, repetitive, non-complex work did not, in Ms. Kraft's view, account for those difficulties. Ms. Kraft further maintains that

15

the ALJ failed to consider fluctuations in her mental status and how her physical and mental impairments worked in combination. *See* Pl.'s Br. 13–16; Pl.'s Reply 6–9 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009); *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014); *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008)).

ALJs must consider a claimant's mental abilities when fashioning their RFC assessments because "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, . . . may reduce [the claimant's] ability to do past work and other work." 20 C.F.R. §§ 404.1545(c), 416.945(c). Consequently, both the ALJ's mental RFC and the hypothetical questions posed to the vocational expert "must incorporate all of the claimant's limitations supported by the medical record." *See Yurt*, 758 F.3d at 857.

At step three of the sequential evaluation process, the ALJ determined that Ms. Kraft had a moderate limitation concentrating, persisting, or maintaining pace. The ALJ based this finding on Ms. Kraft's performance during the consultative mental-status examination with Jeremy Meyers, Ed.D., as well as her reported activities. *See* Tr. 19 (citing Tr. 320–28, 716–22). The ALJ's subsequent mental RFC assessment was more specific: Ms. Kraft had the RFC to perform "simple routine repetitive non-complex work." Tr. 20.

Ms. Kraft presented to Dr. Meyers on October 15, 2015, for a psychological evaluation. *See* Tr. 716–22. After interviewing Ms. Kraft and administering a series of mental-aptitude tests, Dr. Meyers reached the following conclusions regarding

16

Ms. Kraft's work capacity: Ms. Kraft had the ability "to understand, remember, and carry out simple instructions subject to limitations imposed by her physical condition"; Ms. Kraft "should be able to respond appropriately to supervisors and co-workers"; "maintaining concentration and attention may from time to time test [Ms. Kraft's] ability to focus"; Ms. Kraft should be able to meet work pace demands (again subject to her physical limitations); Ms. Kraft "may have a problem withstanding anything more than routine work stress"; and Ms. Kraft "should be able to adapt to the kind of job site changes she would encounter in vocational situations suitable to her skill level." Tr. 720–21.

The ALJ afforded "some weight" to Dr. Meyers's opinion concerning Ms. Kraft's mental abilities but did not accept Dr. Meyers's caveats about Ms. Kraft's physical abilities. Tr. 25. According to the ALJ, Ms. Kraft's physical abilities were outside Dr. Meyers's area of expertise.

While the ALJ's mental RFC incorporated most of Dr. Meyers's opined limitations, it does not appear to address Ms. Kraft's issues focusing and maintaining concentration. On remand, the ALJ should consider whether an off-task limitation is appropriate and, if so, how that limitation affects Ms. Kraft's ability to work.

### 4. Whether the ALJ erred in evaluating Ms. Kraft's subjective Allegations

Finally, Ms. Kraft argues that the ALJ violated SSR 16-3p by failing to explain how the evidence undermined her allegations of disabling symptoms. *See* Pl.'s Br. 16–18; Pl.'s Reply 9–12.

ALJs use a two-step process for evaluating an individual's symptoms. Social Security Ruling No. 16-3p, 2016 SSR LEXIS 4, at *5–10 (March 16, 2016). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ here concluded that Ms. Kraft's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found that Ms. Kraft's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence

18

and other evidence in the record." Tr. 21. Specifically, the ALJ reasoned that "the medical records fail[ed] to substantiate [Ms. Kraft's] allegations of disabling symptoms" and that Ms. Kraft's "activities suggest[ed] a physical and mental capacity in excess of what she has alleged." Tr. 21; *see also* Tr. 20–27. This determination does not appear to be patently wrong. However, on remand the ALJ should reevaluate Ms. Kraft's subjective allegations in light of the other issues identified above.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ erred when assessing Ms. Kraft's physical RFC and weighing the opinions of Ms. Kraft's treating doctors. Based on this record, however, the Court cannot determine whether Ms. Kraft was disabled as of October 2015. Accordingly, the Court concludes that it is necessary to remand this matter to the Commissioner for reconsideration of the ALJ's RFC assessment and, potentially, her step-four and step-five findings.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this <u>14th</u> day of September, 2018.

                                      **BY THE COURT:**

                              <u>*s/ David E. Jones*           </u>
                              DAVID E. JONES
                              United States Magistrate Judge